UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHANEL WIGGINS,<br><br>Plaintiff,<br><br>v.<br><br>CAPITAL ONE AUTO FINANCE, A DIVISION OF CAPITAL ONE, N.A.,<br><br>Defendant. | Civil Action No. 22-4172 (RK) (DEA)<br><br>**OPINION** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court on Defendant Capital One Auto Finance's ("Capital One") Motion to Dismiss (ECF No. 14) Plaintiff Shanel Wiggins' Amended Complaint (ECF No. 6). Defendant's motion and supporting brief were filed on January 12, 2023. On May 31, 2023, Plaintiff notified the Court that she did not seek to file any submissions in opposition to the motion, and no submissions have been filed to date. The Court has carefully considered the parties' submissions and decides the motions without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons that follow, Defendant's Motion to Dismiss is **GRANTED**.

**I.    JURISDICTION AND VENUE**

Jurisdiction is based upon federal question jurisdiction pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391(b) because the events giving rise to these claims occurred in Monmouth County, New Jersey, located within this judicial district.

**II.    BACKGROUND**

The following facts are derived from Plaintiff's Amended Complaint and the ten (10) exhibits filed in support thereof. On September 2, 2021, Plaintiff entered into a consumer credit

transaction with Automotive Avenues, LLC for the purchase of a used 2020 Mercedes-Benz. (Am. Compl. ¶ 12, ECF No. 6.) To consummate the transaction, Automotive Avenues prepared a Retail Installment Sale Contract ("RISC"). (*Id.* at ¶ 14.) The Truth-in-Lending Disclosures in the RISC provided that $40,221.04 would be financed at an annual rate of 6.90 percent with an additional finance charge of $9,153.68. (*Id.* at ¶ 14; Ex. A at 7, ECF No. 1-6.) Plaintiff would be required to pay "the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below," which detailed 72 monthly payments of $685.76. (*Id.*) The contract also indicated in several places that Automotive Avenues had assigned its interest in the contract to Defendant.[1] (*Id.* at ¶ 17; ECF No. 1-6 at 5, 11, 13.)

On September 14, 2021, Plaintiff mailed Defendant a "cease & desist letter" stating that she "disputes and refuses to pay the alleged debt" because the "consumer credit transaction was somehow illegally turned into a loan," and requested that Defendant cease all communication with Plaintiff. (*Id.* at ¶ 29; Ex. B at 1, ECF No. 1-8.) On March 1, 2022, Defendant notified Plaintiff that her account had been placed in "Cease and Desist status, effective October 25, 2021, and [Capital One] will no longer contact [her] regarding this account." (*Id.* at ¶ 30.)

On February 18, 2022, Plaintiff filed a complaint with the Consumer Financial Protection Bureau ("CFPB") and demanded that Defendant return to her all payments made in connection with her purchase, including the $5,500 down payment and four $685.76 monthly installment

---

[1] Plaintiff's complaint also states that approximately one week after signing the RISC, Automotive Avenues purportedly called Plaintiff and emailed a new "contract" (quotations provided in Plaintiff's Complaint), indicating that "Defendant is requiring an additional $1,500 due to 'financing' issues." (*Id.* at ¶ 13.) There was no evidence provided indicating that Plaintiff signed this new "contract." While the September 2, 2021 contract was provided as an exhibit, this supposed new "contract" or addendum does not appear to have been provided to the Court. Plaintiff also does not indicate that she signed the "contract" or any agreement aside from the September 2, 2021 RISC. Moreover, her subsequent letters to Defendant and the Consumer Financial Protection Bureau discuss only the September 2 RISC, not a purported superseding, amended, or supplemental agreement or addendum.

payments made between October 2021 and February 2022. (*Id.* at ¶ 35.) She also requested that Defendant remove the "illegal lien from [P]laintiff's title" and reflect a $0.00 account balance. (*Id.*)

On April 4, 2022, Defendant mailed Plaintiff a letter informing her that she was in default and advised her of the prospect of seizure of the Mercedes-Benz due to her continued nonpayment. (*Id.* at ¶ 36.) The letter further stated that "[t]his communication is from a debt collector and is an attempt to collect a debt[.]" (*Id.* at ¶ 37.) On April 14, 2022, Plaintiff sent Defendant a letter demanding to rescind the transaction. (*Id.* at ¶ 38.) Shortly thereafter, upon discovering that Defendant had reported her late payments to various credit bureaus, she initiated the instant action. (*Id.* at ¶ 39.)

Plaintiff has sued Defendant in a twenty-one-count Complaint alleging violations of the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*, and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, *et seq.* Plaintiff seeks the Court to award Plaintiff "title to the 2020 Mercedes-Benz free and clear of liens," and upwards of $1,330,000.00 in actual and punitive damages. (ECF No. 6 at 25–26.)

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint that fails "to state a claim upon which relief can be granted." For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual allegations to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). A claim is facially plausible when, accepting all well-pleaded facts as true, the

Court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). "Restatements of the elements of a claim are legal conclusions, and therefore, are not entitled to a presumption of truth." *Valentine v. Unifund CCR, Inc.*, No. 20-5024, 2021 WL 912854, at *1 (D.N.J. March 10, 2021) (citing *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011).

As Plaintiff is proceeding *pro se*, the Court construes the allegations in the Complaint liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45, 58 V.I. 691 (3d Cir. 2013)). However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quotation marks and citations omitted). An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Id.*

## IV. DISCUSSION

### A. FDCPA CLAIMS

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." *Rotkiske v. Klemm*, 140 S. Ct. 355, 358 (2019) (quoting 15 U.S.C. § 1692(e)). "The FDCPA pursues these stated purposes by imposing affirmative requirements on debt collectors and prohibiting a range of debt-collection practices." *Id.* (citing 15 U.S.C. §§ 1692b-1692j); *see also Riccio v. Sentry Credit, Inc.*, 954 F.3d 582, 585 (3d Cir. 2020) (en banc) ("The FDCPA protects against abusive debt collection practices by imposing restrictions and obligations on third-party debt collectors.").

To state a claim under the FDCPA, a plaintiff must establish that "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the [FDCPA] defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Moyer v. Patenaude & Felix, A.P.C.*, 991 F.3d 466, 470 (3d Cir. 2021) (internal citation omitted). A plaintiff must allege sufficient facts to support each of these elements. *See Humphreys v. McCabe Weisberg & Conway, P.C.*, 686 F. App'x 95, 97 (3d Cir. 2017) (dismissing Plaintiff's FDCPA claim because it was premised on "conclusory and speculative statements").

Defendant does not contest that Plaintiff is a "consumer" under the statute. Defendant's central (although not its only) objection pertains to whether Plaintiff has sufficiently pled the second element. The FDCPA defines "debt collector" as "any person" who "uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts" or "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692(a)(6); *Tepper v. Amos Fin., LLC*, 898 F.3d 364, 365–66 (3d Cir. 2018). This definition also includes persons using interstate commerce with the principal purpose to enforce security interests. *Id.*

The definition of debt collector also contains six (6) enumerated exceptions, two of which bear relevance here. Section 1692(a)(6)(A) excludes "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor." Section 1692(a)(6)(F) further excludes "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor."

5

Plaintiff's Complaint asserts that Defendant is a "debt collector as the term is defined in the [FDCPA]" because "Defendant uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of . . . debts . . . ." (ECF No. 6 ¶¶ 4, 7.) However, the RISC, which Plaintiff submitted in support of her Complaint, clearly states that Defendant was assigned the interest at the time Plaintiff entered into the contract on September 2, 2021. (*See* ECF No. 1-5 at 5, 12.) Thus, Defendant was attempting to collect on its own debt, which it had obtained prior to Plaintiff's refusal to pay and subsequent default around April 4, 2022. Accordingly, some (if not all) of the exceptions under 1692(a)(6)(A), 1692(a)(6)(F)(iii) or (iv) appear to apply to Defendant.

Because Plaintiff has not demonstrated by a preponderance that Defendant is a "debt collector," each of her claims arising under the FDCPA — namely, Counts I through XVII of the Amended Complaint — must fail.

## B. FCRA Claims

Counts XVIII and XIX allege violations of sections 1681s-2(a)(1)(A) of the FCRA for furnishing information regarding Plaintiff's "late payments" to Experian, Transunion, and Equifax when Defendant should have known the information was inaccurate and without providing written notice to Plaintiff. (ECF No. 6 ¶¶ 119–127.) Regarding the alleged inaccuracy, Plaintiff does not contend that Defendant's recordkeeping reflected an inaccurate balance or that she made timely payments. Rather, Plaintiff's basis for inaccuracy rests on the proposition that the contract that bound her to the monthly payment scheme was void as a matter of law under the FDCPA and the TILA, thereby excusing her from payment.

Plaintiff cannot bring a claim under § 1681s-2(a)(1)(A) because that section does not grant a private right of action. *See* 15 U.S.C. § 1681s-2(c); *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28

6

(3d Cir. 2011). Even if it did, or if Plaintiff had sued under the private right of action in § 1681s-2(b), Plaintiff has still failed to allege sufficient facts to plausibly demonstrate that the information was inaccurate or that Defendant failed to conduct a reasonable investigation. *Schiano v. HomEq Servicing Corp.*, 832 Fed. App'x 116, 120 (3d Cir. 2020); *SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 359 (3d Cir. 2011). Plaintiff's Complaint and supporting exhibits show that she was behind on her monthly payments, and that Defendant investigated her dispute and found the reported information to be accurate. (*See* Ex. C, ECF No. 1-9; Ex. D, ECF No. 1-10; Ex. F, ECF No. 1-12.) The Court finds no support in the Complaint or supporting exhibits for Plaintiff's nonsensical theory that she had bought the entire car "on credit" and therefore was somehow exempt from making monthly installment payments. (*See* Am. Compl. ¶ 35; Ex. B at 1.) To the contrary, as is axiomatic, Plaintiff bargained for and accepted the very terms and conditions of purchasing the late model Mercedes-Benz on credit in exchange for ongoing payment obligations which she apparently failed to abide by, a fact which she does not contest in her Complaint. (*See* Ex. A, ECF No. 1-6.)

### C. TILA CLAIMS

Count XX of the Complaint alleges that the RISC violated the TILA by failing to give Plaintiff notice and opportunity to rescind or cancel the contract as required under 15 U.S.C. § 1635. (ECF No. 6 ¶¶ 128–140.)

The TILA regulates "the relationship between lenders and consumers . . . by requiring certain disclosures regarding loan terms and arrangements." *McCutcheon v. America's Servicing Co.*, 560 F.3d 143, 147 (3d Cir. 2009). The TILA generally requires "that a creditor in a consumer transaction disclose, among other things: (1) the identity of the creditor; (2) the amount financed; (3) the finance charge; (4) the annual percentage rate; (5) the sum of the amount financed and the

finance charge, or total of payments; [and] (6) the number, amount, and due dates or period of payments scheduled." *Krieger v. Bank of Am., N.A.*, 890 F.3d 429, 432 (3d Cir. 2018) (quotation omitted); *see generally* 15 U.S.C. §§ 1601–04.

To state a claim under the TILA, Plaintiff must indicate "with requisite specificity which charges and fees were not properly disclosed and why certain charges and fees are not bona fide and are unreasonable in amount." *Wilson v. RoundPoint Mortg. Serv. Corp.*, No. 21-19072, 2022 WL 3913318, at *5 (D.N.J. Aug. 31, 2022) (citing *Payan v. GreenPoint Mortg. Funding, Inc.*, 681 F. Supp. 2d 564 (D.N.J. 2010)). "Without more, such assertions are merely 'bald assertions' and 'legal conclusions' without any factual support." *Id.* (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

Plaintiff argues that she was neither advised of nor provided her right to rescind pursuant to 15 U.S.C. § 1635. (ECF No. 6 ¶¶ 133–136.) This section provides, in relevant part:

> Except as otherwise provided in this section, in the case of any consumer credit transaction . . . in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any *property which is used as the principal dwelling of the person* to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this title, whichever is later, by notifying the creditor, in accordance with regulations of the Bureau, of his intention to do so.

15 U.S.C. § 1635(a) (emphasis added). Courts have consistently held that this section does not apply to motor vehicle transactions. *See, e.g., West v. Wells Fargo Auto*, No. 22-4405, 2023 WL 199676, at *3 (E.D. Pa. Jan. 17, 2023); *Stephens v. Regional Hyundai, LLC*, No. 21-0414, 2022 WL 3139749, at *2 (N.D. Okla. Aug. 5, 2022); *Hudson v. Scharf*, No. 21-5827, 2022 WL 1227111, at *3 (W.D. Wash. Apr. 25, 2022); *Jeffries v. Wells Fargo Bank, NA*, No. 10-5889, 2011 WL

5023396, at *4 (N.D. Ill. Oct. 19, 2011). Plaintiff is therefore not entitled to rescind the contract under 15 U.S.C. § 1635 because the contract was secured by her 2020 Mercedes-Benz rather than real property that Plaintiff used as her principal dwelling.

Plaintiff's remaining claims regarding the "finance charge" and the "no cooling off period" provisions lack any explanation of how these provisions were inaccurate, unreasonable, or unlawful under the Act. The RISC shows that the finance charge was disclosed on the first page in a box labeled "Federal Truth-In-Lending Disclosures," and further explained on the third page of the contract. (*See* ECF No. 1-6). Plaintiff's misunderstanding of her payment obligations does not render the RISC or its disclosures unlawful under the TILA. Without any specificity, Plaintiff's claims regarding the finance charge and "no cooling off" provisions are no more than conclusory allegations and cannot withstand Defendant's motion to dismiss. *See Diallo v. Capital One, N.A.*, No. 23-1532, 2023 WL 3136145, at *3 (E.D. Pa. Apr. 26, 2023) (dismissing Plaintiff's TILA claims as underdeveloped and lacking specificity); *Toussaint v. Cap. One Fin. Servs.*, No. 22-02448, 2022 WL 1541546, at *1–2 (D.N.J. May 16, 2022) (dismissing TILA claim for insufficient allegations).

### D. RICO Claims

Count XXI claims that Defendant violated the RICO Act by using "extortionate means" to collect its payments, principally by "threatening to repossess" the vehicle after Plaintiff defaulted on her monthly payments. (*See* ECF No. 6 ¶¶ 144–145.) The underlying communication at issue, attached to the Complaint as Exhibit H (ECF No. 1-14), is titled "Notice of Default and Right to Cure" and reads in pertinent part as follows:

> This is a notice that you have failed to comply with the terms and conditions of the above-referenced account by failing to make payments when they were due. You may cure your default by paying the amount due . . . . If you pay $1,391.28 by 4/19/22, you may

9

>continue with the terms and conditions of your contract. If you do not pay the amount due, we may exercise our rights under the law. These rights include, but are not limited to, the right to accelerate the debt, repossess the collateral and obtain a repossession title . . . . If you are a Servicemember or are entering military service, you may be entitled to protection under the Servicemembers Civil Relief Act ("SCRA") . . . . For questions regarding your eligibility under the SCRA, please contact us at the phone number below . . . . If you have any questions, please contact us at [Defendant's phone number and hours of operation]. We look forward to resolving this matter and maintaining our relationship with you in the future.

In summary, the above-referenced correspondence to Plaintiff is devoid of any "threats" or "extortionate means" but rather sets forth, in benign language, the notification of her default; her opportunity to cure; the potential repercussions of failing to cure to the extent prescribed by law; and her possible exemption under the SCRA. Further, the communication provides Defendant's contact information should she wish to discuss any issues or seek clarification.

RICO prohibits the participation or investment in an enterprise that employs "a pattern of racketeering activity or collection of an unlawful debt." 18 U.S.C. § 1692(a)–(d). This proscription extends to both legitimate and illegitimate enterprises, and "can reach even a legitimate repossession company that forfeits on collateral for a usurious loan." *Goldstein v. Repossessors, Inc.*, 815 F.3d 142, 147 (3d Cir. 2016) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 499–500 (1985)).

Plaintiff asserts that "Defendant has a pattern of racketeering activity which requires at least two acts of racketeering activity." (ECF No. 6 ¶ 146.) This conclusory statement does not allege sufficient facts to constitute a "pattern" under the statute. At best, the Complaint alleges a single incident of the potential repossession. While the collection of an unlawful debt "does not require a pattern of activities to constitute a violation," *Goldstein*, 815 F.3d at 147 n.5, the mere notice of the potential of repossession of the vehicle used as collateral for the loan does not on its own constitute an unlawful debt. RICO defines an "unlawful debt" as a debt that is "(A)

10

unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury, and (B) which was incurred in connection with . . . the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate." 18 U.S.C. § 1961(6). Plaintiff has set forth no facts to show that the loan she received was usurious.[2] As a result, Count XXI must fail.

---

[2] The Court notes that the APR on Plaintiff's RISC was 6.9%. (ECF No. 1-6 at 1.) New Jersey's usury law, for instance, provides a state ceiling of 8% and allows national banks to charge interest rates for most loans under $50,000 either at the state ceiling or one percent over the Federal discount rate, whichever is greater. *N.J.S.A.* 31:1-1.1.

11

**V.      CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss is GRANTED. To the extent the deficiencies in Plaintiff's claims can be cured by way of amendment, Plaintiff is granted thirty (30) days to reinstate this matter and file an Amended Complaint for purposes of amending such claims. An appropriate Order accompanies this Opinion.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

Dated: July 5, 2023